UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/2022

ABDOUL KARIM BARRY,

        Plaintiff,

    -against-

MACY'S, INC., BLOOMINGDALE'S INC.;
BLOOMINGDALE'S LLC; NATALIA
SURAZHSKY, individually, and APRIL DITO,
individually,

        Defendants.

No. 20-cv-10692 (CM)

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

Plaintiff brings this action against Defendants Macy's, Inc. ("Macy's"), Bloomingdale's, LLC (formerly Bloomingdale's, Inc., together referred to as "Bloomindale's"), Natalia Surazhsky ("Surazhsky") and April Dito ("Dito"), claiming unlawful discrimination, hostile work environment and retaliation (Counts I, II, III, IV, V, VI) under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA") against Macy's and Bloomingdale's; violation, retaliation and interference (Counts VII and VIII) against Macy's and Bloomingdale's under the Family and Medical Leave Act of 1993 ("FMLA"); as well as discrimination, hostile work environment, retaliation, aiding and abetting and interference (Counts IX, X, XI, XII, XIII, XIV, XV and XVI) against Surazhsky and Dito under the New York State Human Rights Law, N.Y. Executive Law, § 290, *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code 8-107, *et seq.* ("NYCHRL").

Defendants moves for summary judgment dismissing Plaintiff's Complaint ("Complaint" or "Compl."). Plaintiff does not oppose the motion. (Dkt. No. 41). Specifically, Plaintiff's counsel writes, "after careful review of Defendants' submissions and the evidentiary record compiled in this case, I am unaware of any good-faith basis for opposing Defendants' motion." (*Id.*).

That being the case, and the record revealing no genuine dispute of material fact, the Defendants' motion is GRANTED.

## STATEMENT OF FACTS

Unless indicated otherwise, the following facts are taken from Defendants' Rule 56.1 Statement of Undisputed Facts ("SUF") (Dkt. No. 36). Plaintiff has not filed an opposition to Defendants' motion or a counterstatement to the SUF. (*See* Dkt. No. 41).

Even where a Rule 56.1 Statement is unopposed, the district court must still be satisfied that each citation to evidence in the record supports the defendant's assertions. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). A defendant's "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Instead, "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible" as required by Fed. R. Civ. P. 56(e). *Id.* Accordingly, where a defendant cites "admissible evidence . . . in the record tending to prove each such fact," these well-supported factual allegations are deemed admitted. *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014); Fed. R. Civ. P. 56(e)(2); *see Aptive Env't, LLC v. Vill. of E. Rockaway, New York*, No. 21-677-CV, 2022 WL 211091, at *2 (2d Cir. Jan. 25, 2022) (summary order) (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)) ("So long as the moving party's Rule 56.1(a) statement includes citations to admissible evidence, '[i]f the opposing party then fails to controvert

2

a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.'").

Here, the Court has "conducted an assiduous review of the record" and finds that Defendants' SUF relies on admissible evidence and is supported by the record. *See Holtz*, 258 F.3d at 73. The facts set forth in Defendants' SUF are considered admitted and undisputed.

## A. Parties

Plaintiff Abdoul Karim Barry is a former employee of Bloomingdale's. (SUF ¶1).

Defendant Macy's is a business corporation organized under the laws of Delaware. (Compl. ¶10). Defendant Bloomingdale's LLC (formerly Bloomingdale's Inc.) is a limited liability company organized under the laws of Ohio. (*Id.* ¶¶11, 12). Defendant Natalia Surazhsky is an employee of Bloomingdale's and worked at the 59th Street Bloomingdale's store, holding the position of Alterations Manager. (*Id.* ¶16). Defendant Dito is a former employee of Bloomingdale's and worked at the 59th Street Bloomingdale's store, holding the position of HR Manager. (SUF ¶5).

## B. Plaintiff's Employment at Bloomingdale's

Plaintiff was hired in November 2017 to work in the alterations department in the flagship Bloomingdale's store located at East 59th Street and Lexington Avenue. (SUF ¶1). Specifically, Plaintiff worked in the Men's Alterations Area. (*Id.*). At the time Plaintiff was hired, Angela Kotsovolos was Plaintiff's manager and remained his manager until November 2019. (*Id.* ¶2). In November 2019, Defendant Surazhsky became the manager of the Men's Alterations Area. (*Id.* ¶3).

When Surazhsky began working at the 59th Street store, her first task was to evaluate the skill level of all of the alterations employees. (*Id.* ¶13). Surazhsky evaluated Plaintiff as one of the lowest skilled of the group. (*Id.* ¶14). Specifically, Plaintiff failed to use the universal marking

3

methods used in alterations. (*Id.* ¶15). When these universal markings are used, any alterations employee performing the alterations can understand what needs to be done to the garment. (*Id.*). When Plaintiff marked garments, it was often unclear to other employees what alterations needed to be done. (*Id.*). This required numerous conversations, by the employee doing the alterations, with Plaintiff in order to find out what was needed. (*Id.*). At times, when Plaintiff's markings were followed, the garment was not altered properly – the sleeves or legs were too long or too short. (*Id.*). This required a second fitting with the customer and a re-altering of the garment. (*Id.*).

Surazhsky also expected all alterations employees to be able to alter denim products. (*Id.* ¶16). Plaintiff was not able to alter denim. (*Id.*). When he was scheduled to work in the store's "Metro" area (where denim products were worked on), Plaintiff often did not show up to work. (*Id.*). Surazhsky worked with Plaintiff to teach him how to properly alter denim products, but he was resistant. (*Id.*).

Plaintiff's performance was also lacking in other areas. Surazhsky oftentimes was unable to locate Plaintiff in the place he was supposed to be. (*Id.* ¶18). Additionally, Plaintiff took too long to alter garments. (*Id.* ¶19). Bloomingdale's has a required productivity level for each employee of 24 points per hour. (*Id.*) Plaintiff would rarely make 24 points per hour when performing alterations. (*Id.*).

Due to his continued performance issues, Surazhsky placed Plaintiff on a Counseling Summary on December 20, 2019. (*Id.* ¶20). Surazhsky also worked with Plaintiff on both his marking and alteration skills. (*Id.* ¶21). When Plaintiff's job performance did not improve, he was given a Formal Reminder on February 17, 2020. (*Id.* ¶22). This write up also addressed various performance deficiencies. (*Id.*). During this meeting, Plaintiff refused to participate in the

conversation, told Surazhsky that she made him sick, and ultimately left in the middle of the conversation. (*Id.*).

Plaintiff, as a member of a union, grieved his write ups. (*Id.* ¶23). The union asked the 59th Street store to investigate the complaint. (*Id.*). Courtney Cox ("Cox"), the Employee Relations Manager, conducted the investigation. (*Id.* ¶¶6, 23). Plaintiff's grievance was ultimately resolved with Defendant Dito rescinding the December 2019 Counseling Summary. (*Id.* ¶24). The Formal Reminder was reduced to a Counseling Summary. (*Id.*). Cox also had Plaintiff and Surazhsky meet to discuss Plaintiff's work concerns. (*Id.* ¶25).

At the meeting, Plaintiff stated that Surazhsky "bothered" him. (*Id.*). Surazhsky reinforced her concerns about Plaintiff's issues with properly marking garments for alterations and explained that he needed to do the markings so that the alterations team could alter garments without further reaching out to Plaintiff. (*Id.*). At the end of the discussion, Plaintiff acknowledged that he understood what Surazhsky expected of him and agreed that he would work with her to make the team better. (*Id.*).

## C. Racially Discriminatory Comments

Defendants categorically deny that any racial discriminatory remarks were ever made. (*See* SUF ¶¶59-65). However, as the SUF admits, Plaintiff testified in his deposition that his supervisor Defendant Surazhsky made several racially discriminatory remarks, including: "1) she told him he could not work in the fitting area because he was black; 2) he should be working for a dry cleaner; 3) she was surprised that he was selected for the photo on the website because he was black; 4) after she told Barry to work in a different location and he did not do what she said, Surazhsky brought him into her office and said (on January 24, 2020), 'you are fucking black' and 'I don't know why they hire someone like you.'" (SUF ¶66). Plaintiff testifies in his deposition that he "put

complaint against [Surazhsky] in human resources" (Dkt. No. 37-1, at 20:25-21:4) but the record reflects no such complaint. Cox testifies that she never received any report of any racially discriminatory remarks made by Surazhsky or anyone else. (*See* SUF ¶¶61, 64).

**D. Plaintiff Takes Leave of Absence, is Furloughed, then Terminated**

Shortly after the meeting, Plaintiff took his first leave of absence. (*Id.* ¶29). Plaintiff never submitted any documentation supporting the need for this leave of absence. (*Id.* ¶77). During this leave of absence, the COVID-19 Pandemic began, which resulted in Defendant Bloomingdale's LLC's shutting down all Bloomingdale's stores and furloughing most employees, including Surazhsky and Plaintiff. (*Id.* ¶30). Surazhsky returned to work in mid-June 2020. (*Id.* ¶31). At that time, she began calling alterations employees to ask them to return to work. (*Id.* ¶32). Plaintiff did not answer Surazhsky's calls, and he did not have working voice mail. (*Id.*). Surazhsky also reached out to Plaintiff via email with no response. (*Id.* ¶¶34-35).

Cox had begun processing Plaintiff's termination when Plaintiff suddenly and unexpectedly showed up on July 30, 2020 for an orientation scheduled for returning employees. (*Id.* ¶¶35-36). Plaintiff spoke with Cox, and they decided Plaintiff would return to work on August 4, 2020; Cox rescinded Plaintiff's termination. (*Id.* ¶¶37-38).

Due to COVID-19, store protocols changed. (*Id.* ¶39). One change in protocol was that only one employee was allowed to do fittings while everyone else in the alterations department was required to work in the alterations workroom. (*Id.* ¶40). Defendant Surazhsky picked the employee she felt was the best fitter to do fittings. (*Id.*). That person was not Plaintiff. (*Id.* ¶41). Plaintiff was told he needed to work in the workroom doing alterations and that it was the only position available based on the pandemic and limited need for fitters at the time. (*Id.*).

The tailoring position at Bloomingdale's required employees to be able to fit garments and do the sewing required for alterations. (*Id.* ¶42). Prior to the pandemic, Plaintiff had sewed many garments. (*Id.*). Now Plaintiff refused, stating that, for medical reasons, he could not do alterations. (*Id.* ¶43). Plaintiff did not return to work on August 4, 2020. (*Id.*).

Cox gave Plaintiff several options: (1) take a leave of absence if his medical provider thought that was necessary; (2) secure a request for accommodation if there were a medical reason he could not work in the workroom; (3) return to work in the workroom; or (4) resign. (*Id.* ¶44). Plaintiff stated he would get a medical accommodation. He was offered assistance with filling out the required forms but declined any help. (*Id.* ¶45).

In September 2020, Plaintiff admitted that he did not have a medical reason for not working in the alterations area; he simply did not want to work in the workroom and did not want to work with Defendant Surazhsky. (*Id.* ¶47). Cox informed Plaintiff that because he had no medical issue requiring accommodation, his options were either to return to work or resign. (*Id.*).

During this conversation Plaintiff told Cox he needed to be off from work on Wednesdays and Thursdays in order to help his children with school. (*Id.*). Defendant Surazhsky subsequently discovered that Plaintiff was working for a competitor on those days, which was a violation of company policy. (*Id.* ¶52). Plaintiff ultimately admitted that he was working elsewhere on these days off. (*Id.* ¶53).

September 10, 2020 was Plaintiff's first day back at work since February 2020. (*Id.* ¶48). Plaintiff worked in the alterations room until mid-November 2020, at which time he told Cox his mother was ill and he was taking a leave of absence. (*Id.*). Plaintiff never returned. (*Id.*).

Defendant Macy's reached out to Plaintiff multiple times; representatives told Plaintiff that he needed to submit documentation for a leave of absence to care for his mother and reminded him

no such documentation had been received. (*Id.* ¶81). Plaintiff claimed to be "unsure" whether he submitted the required paperwork; there is no evidence in the record that he did so. (*Id.*).

Plaintiff never returned to work after November 2020. (SUF ¶49). His employment was ultimately terminated in September 2021. He was fired because he failed to provide the paperwork needed to support a leave of absence. (*Id.* ¶50). The decision was made by the ADLM team, who was responsible for reviewing and approving requests for accommodation and leaves of absence. (Dkt. No. 38 ¶2). Surazhsky and Cox were not members of that team. (*Id.*; Dkt. No. 32 ¶32).

## STANDARD

Summary judgment is designed "to flush out those cases that are predestined to result in directed verdict." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997). Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Identifying a "genuine" dispute is not necessarily enough to defeat the motion, because not every disputed factual issue is *material* in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248; *see City of New York v. Philadelphia Indem. Ins. Co.*, No. 09 Civ. 7253(CM), 2010 WL 3069654, at *4-5 (S.D.N.Y. July 27, 2010). In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir. 2001).

At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

When a motion for summary judgment is unopposed "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co.*, 373 F.3d at 242. The district court must "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then "summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Vermont Teddy Bear Co.*, 373 F.3d at 244 (emphasis added).

## DISCUSSION

### I. Plaintiff has Failed to Establish a Prima Facie Case of Employment Discrimination Under Title VII, The ADA, NYSHRL and NYCHRL, So the Motion for Summary Judgment Dismissing Counts I, IV, IX and XIII is Granted

Plaintiff alleges claims of discrimination against Bloomingdale's and Macy's under Title VII and the ADA, as well as against Surazhsky and Dito under the NYSHRL and the NYCHRL.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–

2(a)(1)). The Supreme Court has interpreted Title VII to encompass more than economic or tangible discrimination; it also forbids an employer to "require[e] people to work in a discriminatorily hostile or abusive environment." *Id.*

"Claims of employment discrimination under Title VII are analyzed pursuant to the tripartite burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)." *Lee v. Sony BMG Music Entm't, Inc.*, No. 07 Civ. 6733(CM), 2010 WL 743948, at *6 (S.D.N.Y. Mar. 3, 2010). Discrimination claims under both the NYSHRL and the NYCHRL are also subject to the burden-shifting analysis applied to discrimination claims under Title VII. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). Disability-discrimination claims under the ADA similarly are analyzed under the same framework. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).

Under that framework, a plaintiff initially bears the burden of producing evidence to support a prima facie case of discrimination by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for his position or was performing his job duties satisfactorily; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *see also Spiegel*, 604 F.3d at 80. While "Such evidence need be no more than 'minimal' or 'de minimis,'" *Campbell v. Cellco P'ship*, 860 F.Supp.2d 284, 295 (S.D.N.Y. 2012), a plaintiff's claims nevertheless fail if he cannot make out his prima facie case. *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).

On summary judgment, the district court's "determination of whether the circumstances 'giv[e] rise to an inference' of discrimination must be a determination of whether the proffered

admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Bryant v. Verizon Commc'ns, Inc.,* 550 F.Supp.2d 513, 535 (S.D.N.Y. 2008). The district court is not itself to decide what inferences should be drawn. *Id.*

"Once a plaintiff establishes a prima facie Title VII case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision at issue." *Carter v. New Venture Gear, Inc.*, 310 Fed. App'x 454, 456 (2d Cir. 2009). "If the employer satisfies this requirement, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer was acting with pretext." *Id.*

Claims under the NYCHRL must be analyzed separately from the federal and state claims, as the NYCHRL is a broader and more permissive statute. *See Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015). A discrimination claim is actionable under the NYCHRL where an employee is treated "less well" because he belongs to a protected class. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110-11 (2d Cir. 2013). Under the NYCHRL "summary judgment is appropriate if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015) (internal quotation marks and alterations omitted).

As to Counts I, IX and XIII, Defendants do not contest that Plaintiff establishes the first element of Plaintiff's prima facie case. Plaintiff is a member of two protected classes: he is Black and from Guinea. (Compl. ¶17). But Defendants correctly argue that Plaintiff fails to satisfy the other three elements of a prima facie case.

The SUF makes abundantly clear that Plaintiff's job performance was not satisfactory. Rather, the evidence overwhelmingly and without contradiction supports the conclusion that

Plaintiff was one of the "lowest skilled" alterations employees at Bloomingdale's. (SUF ¶14). Moreover, there is not a scintilla of evidence to support the argument that Plaintiff was ultimately fired due to his race or national origin. Plaintiff never reported that Surazhsky or anyone else made comments about his race or national origin, and Defendants categorically deny ever making such statements. (*Id.* ¶¶59-65). It was Plaintiff's failure to complete required paperwork for his unexplained leave that ultimately resulted in his termination. The failure to complete paperwork is entirely unrelated to his race or his national origin.

Turning to the NYCHRL, even under its less stringent standard, no reasonable juror could find that Plaintiff was treated "less well" because he belongs to a protected class or that discrimination played any role in his termination.

The only evidence of discrimination in the record is Plaintiff's testimony about racially disparaging remarks allegedly made by Surazhsky. She of course denied making those remarks, but on a motion for summary judgment one views the record most favorably to the Plaintiff. His testimony and her denial create a genuine issue of fact.

But they do not create a genuine issue of *material* fact, which is what is required to defeat a motion for summary judgment. Fed. R. Civ. P. 56. The reason Plaintiff was fired was that he failed to come in to work for nine months – allegedly in order to care for his mother, although nine months is a period far longer than allowed by FMLA – and never submitted the paperwork required by his employer in order to justify a FMLA leave. That fact is undisputed. It is also undisputed that the ADLM team made the decision to fire Plaintiff for this reason – a reason unrelated to his race. And it is undisputed that the person who allegedly made the racially disparaging comments – Defendant Surazhsky – was not a member of the team that made the decision to fire Plaintiff. Furthermore, there is no evidence whatsoever in the record that Surazhsky had any input in the

termination decision. Therefore, even if we assume, for purposes of this motion, that Defendant Surazhsky made racially disparaging remarks to Plaintiff, there is no evidence that those remarks figured into his termination, or that Plaintiff's race had anything to do with his termination.

As to Count IV, disability discrimination under the ADA, this claim is dismissed because Plaintiff fails to plead or offer any evidence that he could not perform any major life activity, and because he pleads no facts and offers no evidence tending to suggest that anyone discriminated against him because of any disability or perceived disability. *See* 42 U.S.C. § 12102(2); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998).

Counts I, IV, IX and XIII are, therefore, dismissed.

## II.    The Motion for Summary Judgment Dismissing Counts II, VI and X is Granted

Plaintiff alleges claims of hostile work environment against Bloomingdale's and Macy's under Title VII and the ADA as well as individually against Surazhsky and Dito under the NYSHRL. No such claim is asserted under the NYCHRL.

Being forced to endure a hostile work environment qualifies as an adverse employment action. *See Lee*, 2010 WL 743948, at *6. To survive a summary judgment motion on a hostile work environment claim under Title VII,  Plaintiff must introduce evidence showing that his "workplace was permeated with discriminatory intimidation, ridicule, and insult," which was "sufficiently *severe or pervasive* to alter the conditions of the victim's employment and create an abusive work environment." *Harris*, 510 U.S. at 21 (quotation marks and citations omitted) (emphasis added); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004) (applying the *Harris* standard to claims arising under the NYSHRL).

Courts must look to the totality of the circumstances to determine whether an environment is "hostile" or "abusive," and should consider the following nonexclusive list of factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

13

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "Although one encounter may constitute a hostile work environment, conduct that can be categorized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment." *Jessamy v. City of New Rochelle*, 292 F.Supp.2d 498, 511 (S.D.N.Y. 2003) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998); *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1103 (2d Cir. 1986)).

Plaintiff's evidence must show that the conduct at issue created an environment that is both objectively and subjectively hostile. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999); *Forrest*, 3 N.Y.3d at 311.

However, as famously noted by Justice Scalia, Title VII is not a "general civility code" for the workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "A hostile work environment claim is actionable only as a form of prohibited discrimination, with the hostile work environment being the adverse employment action to which the plaintiff is subjected on account of race, gender, religion or national origin." *Lee*, 2010 WL 743948, at *7. Regardless of whether Plaintiff can prove that he was exposed to a work environment that was both objectively and subjectively hostile, Plaintiff can only succeed on his claim if he can prove that his "mistreatment at work . . . through subjection to a hostile environment . . . occur[red] *because of* a [ ] . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added).

Prior to October 11, 2019, the above analysis would have applied to claims under the NYSHRL as well as Title VII. However, on that day, the NYSHRL was amended to eliminate the "severe and pervasive" standard. N.Y. Exec. Law § 300. This new law was in effect during the

period when the allegedly derogatory remarks were made (November 2019-February 2020), so the standard for assessing whether Plaintiff's work environment differs from the federal standard. To survive this motion, Plaintiff need merely raise a genuine issue that he was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more ... protected categories." *Id.* Under that standard, even one racially derogatory remark could render a workplace environment hostile.

This is the one aspect of the unopposed motion that has given the court pause. However, I conclude that Plaintiff's failure to oppose the motion – coupled with his attorney's statement that there was "no good faith basis" for doing so – negates any suggestion that there exists a genuine issue of material fact.

At his deposition, Plaintiff testified that Defendant Surazhsky made four racially derogatory comments to him during the period November 2019-February 2020. (*See* SUF ¶ 66). Of course, the SUF asserts that no such remarks were made; that Cox never heard Surazhsky make any such remarks; and that Plaintiff never reported to Cox that Surazhsky made any racially derogatory remarks. (*Id.* ¶¶61-64).   However – and I commend Defendants for this -- the SUF acknowledges that Plaintiff gave the deposition testimony mentioned above.  To be quite accurate, the SUF asserts, not that the remarks were made, but that Plaintiff testified that the remarks were made.

In the ordinary court, Plaintiff's deposition testimony would create a genuine issue of fact in this regard – and, in the context of a claim of hostile work environment, it would be an issue of *material* fact, since repeated racially derogatory comments have been held in this Circuit to create the possibility of  a hostile work environment under Title VII and the NYSHRL. *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir.1999) (quoting *Rodgers v.*

*W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir.1993)), *abrogated on other grounds by Burlington Northern*, 548 U.S. 53. ("there is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim.").

However, "So long as the moving party's Rule 56.1(a) statement includes citations to admissible evidence, '[i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.'" *Aptive Env't,* LLC, at *2 (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)) This means that the assertion by Surazhsky in the SUF that she never made any such remarks is deemed admitted, as is the assertion that Plaintiff never reported to anyone that such remarks were made. The fact that Plaintiff testified otherwise at his deposition does not suffice to raise a genuine issue of material fact because, by failing to controvert the specific factual allegations of the SUF, Plaintiff has effectively walked away from that testimony. The fact that his attorney, who was present at the deposition and heard his client testify, has represented to the court that there exists no good faith basis to oppose the motion, only confirms that, while Plaintiff did indeed say those words at his deposition, his testimony cannot be deemed realiable.

Therefore, Plaintiff's hostile work environment claims must be dismissed insofar as they are predicated on racist remarks that were allegedly made by Surazhsky, because, whether under the federal or state standard for measuring hostile work environment, if it is undisputed that no such remarks were made – and Plaintiff's failure to contravene the SUF means that it is in fact undisputed – then Plaintiff's work environment could not have been hostile.

a. **Hostile Work Environment under the ADA**

The Second Circuit has not yet decided whether hostile-work-environment claims are cognizable under the ADA. *Dollinger v. New York State Insurance Fund*, 726 Fed. App'x 828, 830 (2d Cir. 2018). If such claims were cognizable, Plaintiff would need allege facts showing "that the discriminatory treatment at issue was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment' and that the hostility occurred because of the protected characteristic of disability." *Id.* (*quoting Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

However, as discussed above, there is no evidentiary support for the contention that Plaintiff suffered any hostility as a result of any disability from which he suffered. In fact, there is not a scintilla of evidence tending to show that Plaintiff suffered from any disability. Rather the SUF indicates that Plaintiff falsely sought medical accommodations, only to backtrack and state he just did not want to do certain work. (SUF ¶¶42-47). Plaintiff does not have a disability as defined by the ADA.

Count VI is dismissed.

**III.    Plaintiff has Failed to Establish a Prima Facie Case of Retaliation Under Title VII, The ADA, NYSHRL and NYCHRL, So the Motion for Summary Judgment Dismissing Counts III, V, XI and XIV is Granted**

Plaintiff also alleges claims of retaliation against Bloomingdale's and Macy's under Title VII and the ADA, as well as individually against Surazhsky and Dito under the NYSHRL and NYCHRL.

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . " 42 U.S.C. § 2000e–3(a). Retaliation claims, like discrimination claims, are subject to the *McDonnell Douglas* burden-shifting analysis. *Lee,* 2010 WL 743948, at *11. In

order to state a prima facie case of unlawful retaliation under Title VII and the NYSHRL, a plaintiff

must adduce evidence sufficient to permit a rational trier of fact to find:

> (1) that he engaged in protected [activity] under [the antidiscrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Kessler v. Westchester Cnt'y Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)); *see Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ("Retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII.") (citing cases); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (To state a claim for retaliation under the ADA a plaintiff must plead "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.").

The "retaliation inquiry under the NYCHRL is 'broader' than its federal counterpart," however. *Fincher*, 604 F.3d at 723. Under the NYCHRL, a plaintiff need not prove any "'adverse' employment action," but must instead "prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Jimenez v. City of New York*, 605 F.Supp.2d 485, 528 (S.D.N.Y. 2009); *see Pilgrim v. McGraw–Hill Cos., Inc.*, 599 F.Supp.2d 462, 469 (S.D.N.Y. 2009) ("The *prima facie* standard for retaliation claims under the CHRL is different [from the federal and state standard], in that there is no requirement that the employee suffer a materially adverse action. Instead, the CHRL makes clear that it is illegal for an employer to retaliate in 'any manner.'").

"If the plaintiff meets this burden [of establishing a prima facie case] and the defendant then points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

Here, Plaintiff has established that he engaged in protected activity, but his claims fail because he has not offered a scintilla of evidence that he suffered any adverse action *because of* his protected activities, or even that anything at all happened to Plaintiff that would have been reasonably likely to deter him from engaging in protected activity. Therefore, Plaintiff's retaliation claims must be dismissed.

Plaintiff engaged in protected activity by grieving his write ups. (SUF ¶23). As requested by the union, Cox investigated this complaint and it was resolved in Plaintiff's favor. (*Id.* ¶¶23-24). Plaintiff offers no evidence that he was subjected to any adverse employment action because he grieved his write ups. He was not fired for grieving them, and he does not identify any other adverse action that he suffered as a result of grieving his write ups. Plaintiff was ultimately fired – many months later – but for failure to provide the paperwork needed to support a leave of absence that he simply took without permission. (*Id.* ¶50). Significantly, the decision maker who fired him was not even involved in the earlier-filed grievances (*Id.*).

Even under the more liberal NYCHRL standard, Plaintiff fails to prove his claim of retaliation. Nothing in the record supports the notion that something happened that was "reasonably likely to deter" Plaintiff from engaging in protected activity. There is simply no evidence of any retaliation at all.

As for retaliation under the ADA, Plaintiff did not engage in any protected activity. Rather Plaintiff tried to claim that he was disabled, but later admitted that he had no disability and simply did not want to perform the specific tasks he was assigned. Plaintiff is unable to make out his prima facie case.

Counts III, V, XI and XIV are dismissed.

**IV.    Plaintiff has Failed to Establish a Prima Facie Case of Retaliation and Interference Under the FMLA, So the Motion for Summary Judgment Dismissing Counts VII and VIII is Granted**

Two types of claims can arise under the FMLA – interference with a FMLA right, and retaliation.

In Count VII, Plaintiff alleges that Defendants refused to allow him to take FMLA leave. He does not identify this as a FMLA interference claim, but refusing to allow an employee to take FMLA leave qualifies as interference with the exercise of a FMLA right. (Compl. ¶¶79-84).

Unfortunately for Plaintiff, the undisputed evidence is to the effect that Defendants were receptive to allowing Plaintiff to take FMLA leave to care for his mother, but Plaintiff refused to submit the required paperwork. Employers are permitted to set up reasonable policies to ensure that employees provide proper notice under the FMLA. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 161 (2d Cir. 2011) (citing 29 C.F.R. § 825.303(c) ("The FMLA generally requires employees to "comply with the employer's usual and customary notice and procedural requirements for requesting leave.")). Plaintiff offers no evidence that his employer's requirements were unreasonable and no justification for failing to comply with them.

Count VIII, as pleaded, purports to bring a claim under both an interference with FMLA right and retaliation. To the extent of the former, it is purely duplicative of Count VII, since Plaintiff does not identify any FMLA right he was denied other than the right to take leave. Therefore, to that extent, Count VIII is dismissed.

To establish a retaliation claim under the FMLA, a plaintiff "must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

To establish an interference claim:

a plaintiff must establish: (1) that []he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that []he was entitled to take leave under the FMLA; (4) that []he gave notice to the defendant of her intention to take leave; and (5) that []he was denied benefits to which []he was entitled under the FMLA.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). Benefits of the FMLA include, but are not limited to, being "restored by the employer to the position of employment held by the employee when the leave commenced" and being "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614 (a)(1)(A), (B).

The SUF contains not the slightest suggestion Plaintiff was terminated *because* he took leave to support his sick mother. Rather the SUF makes clear Plaintiff was terminated for failure to provide the paperwork needed to support his leave of absence. (SUF ¶50). There is no evidence that this adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.

The rest of Count VIII is dismissed.

## V. Plaintiff has Failed to Establish a Prima Facie Case of Aiding and Abetting and Interference Under NYSHRL and NYCHRL, So the Motion for Summary Judgment Dismissing Counts XII, XV and XVI is Granted

Finally, Plaintiff seeks to hold Surazhsky and Dito individually liable for discrimination, retaliation, hostile work environment, aiding and abetting and interference under the NYSHRL,

and the NYCHRL. The claims against them for discrimination, retaliation and hostile work environment have already been dismissed, so I turn to the aiding and abetting and interference claims.

### a. Aiding and Abetting

It is well settled that there is no individual liability under Title VII. *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals").

Unlike Title VII, the NYSHRL provides for the imposition of liability on individual defendants under two of its provisions: §§ 296(1) and 296(6), "Individual liability under § 296(1) lies only where a defendant actually participates in the conduct giving rise to discrimination, and is limited to individuals with ownership interest or supervisors, who themselves have the authority to hire and fire employees." *Hubbard v. No Parking Today, Inc.*, No. 08 Civ. 7228(DAB), 2010 WL 3835034, at *10 (S.D.N.Y. 2010) (internal citations and quotation marks omitted). Section 296(6) of the NYSHRL provides for "aiding and abetting" § 296(1)(a) violations, explaining that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so." *Id.* (quoting N.Y. Exec. Law § 296(6)). To be found liable under § 296(6), an individual need not have supervisory or hiring and firing power, but still must have "actually participated in the conduct giving rise to the claim of discrimination." *Id.* Since the NYCHRL and NYSHRL use virtually identical language, claims for individual liability under both statutes are subject to the same analysis. *See Schanfield v. Sojitz Corp., Of Am.*, 663 F.Supp.2d 305, 344 (S.D.N.Y. 2009).

Plaintiff's claims of discrimination and retaliation have been found to be wholly unsupported by any evidence and have been dismissed. Given that no discrimination or retaliation occurred, it is not possible for the individual Defendants to have aided and abetting anything.

22

Counts VII and XVI are dismissed.

**b. Interference**

Finally, Plaintiff alleges that the individual Defendants violated N.Y. City Admin. Code §

8-107(19), a NYCHRL provision making it unlawful "for any person to coerce, intimidate,

threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or

protected pursuant to [§ 8-107]." (Compl. ¶¶116-119). A plaintiff is required to allege threats as an

element of such a claim. *See, e.g.*, *Poolt v. Brooks*, No. 110024/09, 2013 WL 323253, at *16 (Sup.

Ct. N.Y. Cnty. 2013) ("[T]his cause of action must be dismissed . . . for plaintiff does not allege

that anyone threatened her."); *cf. Guan N. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 4299 (AJN), 2013

WL 3819609, at *7 (S.D.N.Y. July 23, 2013) (allowing plaintiff to bring § 8-107(19) claim where

she adequately alleged that defendant took "threatening actions against her").

Dismissal is warranted where a plaintiff has pled no facts "tending to support such a claim."

*Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 548 (S.D.N.Y.

2008). That is the case here. The Complaint simply does not allege that Surazhsky or Dito coerced,

intimidated, threatened, or otherwise interfered with Plaintiff in the exercise or enjoyment of any

right under § 8-107, or even attempted to do so. The SUF similarly contains no evidence of any

such conduct.

Count XV is dismissed.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED

without opposition. The Complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to remove the motion at Docket Number 34

from the court's list of open motions and to close this case. This constitutes a written opinion.

Dated: April 6, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL